IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARONISHA RAMSEY, on her own behalf and as Special Administrator of the Estate of KAJUAN RAYE, deceased, | )<br>)<br>) |
| Plaintiff, | ) Case No. 16 CV 10913<br>)<br>) Judge Shah |
| v. | )<br>) Magistrate Judge Mason |
| SGT. JOHN POULOS, individually, and the CITY OF CHICAGO, a municipal corporation. | )<br>) JURY DEMAND<br>)<br>) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

**NOW COMES** the Plaintiff, Karonisha Ramsey, by and through her attorneys, Erickson & Oppenheimer, complaining against the Defendants, Sgt. John Poulos, individually, and the City of Chicago, as follows:

**INTRODUCTION**

1) This action, arising out of the death of 19-year-old Kajuan Raye ("Decedent"), is brought pursuant to 42 U.S.C. §1983 to address deprivations of Decedent's rights under the Constitution of the United States.

**JURISDICTION AND VENUE**

2) This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

**THE PARTIES**

1

3) The Plaintiff, Karonisha Ramsey, is the mother of the Decedent.

4) The Defendant, Sgt. John Poulos, was at all relevant times a duly appointed police officer of the City of Chicago acting within his scope of employment and under color of law. He is sued in his individual capacity.

5) Defendant Poulos's date of appointment to the Chicago Police Department was March 26, 2001.

6) Prior to being appointed to the Chicago Police Department on March 26, 2001, Poulos applied to the Department on three separate occasions: on or about August 15, 1999; on or about March 5, 2000; and on or about September 19, 2000.

7) Since his date of appointment, Poulos has been involved in the fatal shooting of two civilians in which no weapon attributable to the decedent was ever recovered – Kajuan Raye on or about November 23, 2016 and Ricky Rozelle on or about August 31, 2013.

8) Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois, which operated the Chicago Police Department. At all times relevant to the events complained of herein, Defendant City of Chicago was the employer of Defendant Poulos.

## FACTS

9) On or about November 23, 2016, Raye was in the area of the 1400 block of West 65th St. in Chicago, Illinois.

10) Poulos approached Raye, and a foot pursuit ensued.

11) Thereafter, without lawful justification or excuse, Poulos fired at the Decedent, striking and killing Raye.

12) Poulos claimed in statements provided after the shooting that Raye pointed a weapon at him.

13) After the shooting, the Chicago Police Department conducted a thorough search of the scene and surrounding area and failed to locate any weapon.

14) An autopsy of Raye by the Cook County Medical Examiner's Office indicates that Raye was killed by a gunshot in the back.

15) Said actions of Poulos were intentional, willful and wanton and/or committed with reckless indifference and disregard for Decedent's constitutional rights.

16) Said actions of Poulos were objectively unreasonable under the circumstances.

## COUNT I—EXCESSIVE FORCE (Section 1983)

17) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

18) Poulos's actions as set forth hereto constitute excessive force against Decedent, thus violating his rights under the United States Constitution and 42 U.S.C. Section 1983.

19) As a direct and proximate consequence of Poulos's unjustified and excessive use of force, the Decedent suffered damages, including without limitation conscious pain and suffering. His Estate has incurred medical and funeral expenses and suffered injury and emotional distress, including loss of society and companionship.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Poulos for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

## COUNT II– BATTERY (state law claim)

20) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

21) Poulos's conduct resulted in offensive physical contact with the Decedent made without his consent, thus constituting battery under Illinois law.

22) Poulos's actions proximately caused the Decedent to suffer injuries, including without limitation great bodily harm and death as well as pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Poulos for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT III—WRONGFUL DEATH (state law claim)

23) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

24) Poulos's actions as set forth hereto caused the wrongful death of the Decedent, in violation of ILCS 740 180/1 et seq.

25) Poulos's actions proximately caused the Decedent to suffer injuries, including without limitation great bodily harm and death as well as pain and suffering.

26) As a result of Poulos's conduct, the Estate has suffered injury, including without limitation incurring medical and/or funeral expense and the loss of society and companionship.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Poulos for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT IV—SURVIVAL ACTION (state law claim)

27) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

28) After the Decedent was shot, he survived for a period during which he experienced conscious pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Poulos for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT V—FAMILY EXPENSE ACT (state law claim)

29) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

30) As a direct and proximate cause of Poulos's actions which caused the death of the Decedent, Plaintiff Karonisha Ramsey, as mother of the deceased, Kajuan Raye, has been obligated to incur financial expenses including without limitation medical and funeral expenses.

    **WHEREFORE**, the Plaintiff prays for judgment against Defendant Poulos for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT VI—NEGLIGENT HIRING OF SGT. POULOS
### (against Defendant City of Chicago)

31) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

32) At all times referred to herein, it was the duty of the City of Chicago to exercise reasonable care in hiring employees, which includes the duty to adequately scrutinize the background of Defendant Poulos before hiring him as a Chicago police officer entrusted with the safety and security of the public.

33) An adequate scrutiny of Defendant Poulos's background would have led a reasonable policymaker, such as Defendant City of Chicago, to conclude that Poulos was unfit to be a police officer and that the plainly obvious consequence of the decision to hire Defendant Poulos would be a deprivation of the public's, including Plaintiff's decedent's, rights.

34) The City of Chicago breached its duty when it failed to adequately scrutinize Poulos's background and decided to hire him as a Chicago police officer. Had the City performed an adequate investigation into Poulos's background, it would have learned that prior to Poulos's appointment to the Chicago Police Department on March 26, 2001:

    a. Poulos had been arrested by the Chicago Police Department on August 1, 1990 for disorderly conduct; on August 5, 1990 for disorderly conduct; and on May 2, 1992 for disorderly conduct. Poulos omitted all these arrests when he submitted Personal History Questionnaire Background Investigation Chicago Police Department documents to the Department as part of the application process.

    b. Poulos had entered a plea of guilty to tampering with a vehicle and received 18 months supervision on April 14, 1992.

    c. Poulos had been a defendant in criminal case numbers 89122875901, 91132082101, and 92126179201.

    d. On September 19, 2000, Poulos knowingly placed false information on the Personal History Questionnaire Background Chicago Police Department forms by marking "no" in response to question number 57 which asked, "Have you ever been interviewed by the police in a criminal matter?" despite the fact that he had been interviewed in the matter that involved his eventual guilty plea to tampering with a vehicle.

    e. On October 31, 2000, Poulos knowingly made a false statement to Chicago Police Investigator John Hoffman in connection with his employment application when he denied ever being arrested by the police despite his prior documented arrests.

35) As a direct and proximate result of the City of Chicago's failure to adequately investigate and scrutinize the background of Poulos, and its subsequent hiring of him, Decedent's rights were violated.

    **WHEREFORE**, the Plaintiff prays for judgment against Defendant City of

Chicago for an award of reasonable compensatory damages, plus costs.

## COUNT VII— NEGLIGENT RETENTION OF SGT. POULOS
### (against Defendant City of Chicago)

36) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

37) Defendant City of Chicago had a duty to exercise reasonable care in retaining employees.

38) In addition to the misconduct of Poulos as set forth in paragraph 34 above, once hired and while still employed as a police officer, Poulos violated Rule 18(a) of the Department's Rules and Regulations by being the Vice President and ten percent share holder of Fun Times, Inc., an establishment in possession of a liquor license.

39) As part of the process to purchase a ten percent ownership in Fun Times, Inc., Poulos submitted an Individual Information History document with a Chicago Police Department form number of CPD -43.700 on July 7, 2003 in which he falsely stated he had never been arrested by marking "no" in response to the question "Have you ever been arrested?"

40) In the instant case, an internal investigation by the Department was initiated on May 7, 2004 into Poulos' false statements during his employment application process regarding his arrests and whether he was ever interviewed by the police, his false statements regarding his arrests in forms to purchase ownership interest in Fun Times, Inc., and his violation of Department rules prohibiting ownership of a tavern or retail liquor establishment. The investigation was completed on February 26, 2007 with a recommendation by the investigator that Poulos be terminated from the Department. Despite this recommendation, the City continued to employ Poulos and did not take

action to terminate him until 2017, after Poulos had shot and killed two unarmed civilians, including Plaintiff's Decedent.

41) Defendant City breached its duty by retaining Poulos, who repeatedly provided false information and demonstrated a willingness to violate rules and lie when questioned about his conduct, thus posing a danger to the citizens he was sworn to protect.

42) Defendant City had notice of Poulos's lack of fitness to be a police officer, including his credibility problems and his prior fatal shooting of unarmed Ricky Rozelle.

43) Defendant City's retention of Poulos was the proximate cause of an injury sustained by Decedent.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant City of Chicago for an award of reasonable compensatory damages, plus costs.

### COUNT VIII—*MONELL* CLAIM
### (against Defendant City of Chicago)

44) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

45) At all times relevant, Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution to be free from unreasonable force by police.

46) Plaintiff's injuries were proximately caused by policies and practices on the part of the Chicago Police Department, which falls under the authority of Defendant City of Chicago.

47) In November 2016, and for a period of time prior thereto, Defendant City of Chicago had notice of a widespread practice by their employees under which citizens, such as Decedent, were routinely subjected to excessive force.

48) The Chicago Police Department's excessive use of force is enabled by the code of silence.

49) The City of Chicago has also engaged in a widespread practice of its employees testifying dishonestly, making false reports, hiding and destroying evidence, failing to require official reports of official police activities, and/or failing to require complete and honest reports of police activities.

50) These practices are directly encouraged at every level of law enforcement, from the Corporation Counsel's Office, to COPA, to IPRA, to IAD, to the Cook County State's Attorneys' Office, and infects the City's relationship with its police, including but not limited to the employment contract with the Fraternal Order of Police.

51) The failure to require police reports that are complete and honest encourages officers not to report the misconduct of other officers and creates a culture that enables misconduct.

52) Defendant City of Chicago fails to adequately investigate and discipline officers who have conducted wrongful shootings. Likewise, the City fails to adequately and timely discipline their employees when they commit perjury and create false reports.

53) The City has a widespread practice of failing to adequately document claims by officers about police involved shootings.

   a. On information and belief, Officer John Fitzgerald shot Aaron Harrison in 2007 after garnering 25 misconduct complaints between 2001 and 2006. Fitzgerald was awarded the Superintendent's Award of Valor in 2010 for the incident. IPRA ruled the shooting justified, based largely on Fitzgerald's account that Harrison was attempting to shoot him while running away and a gun recovered on the scene. However, multiple witnesses asserted Harrison was unarmed. In 2013, the City settled the civil suit filed by Harrison's family for $8.5 million.

9

b. On information and belief, in 2005, Officer Rick Caballero shot and killed Ben Romaine, who was driving away from Caballero. Despite a court order ordering that Romaine's vehicle be preserved for evidence, the Chicago Police Department destroyed the vehicle. The City also altered dispatch evidence. In his original conversation with the radio dispatcher, Caballero's dialogue was noted in an initial transcript as "He just, he just uh, he just ran so I took a shot at him." Later, after a deposition in which Caballero allegedly claimed his words were "he just rammed us," not "he just ran," an investigator for the Office of Professional Standards changed the record of the dispatch call to "he just, he just uh, he just [unintelligible] so I took a shot at him." Caballero was later awarded the Superintendent Award for Valor for the incident. The City settled the civil suit brought by the family.

c. On information and belief, in 2009, Officer Darren Wright shot and killed Corey Harris in the back. The City settled the civil suit for $1.2 million.

d. On information and belief, Officer Michael St. Clair shot William Hope multiple times in the chest in broad daylight while Hope was in his car. In 2012, a federal jury found against the officers and awarded the family $4.6 million.

e. On information and belief, in 2015, after officers shot Laquan McDonald sixteen times and killed him, the City settled the case for $5 million without any lawsuit being filed. Nine of the shots hit McDonald in the back. Chicago police officers went in a Burger King restaurant located fewer than 100 yards from where 17-year old Laquan McDonald was shot and killed and 86 minutes of surveillance footage (encompassing the time McDonald was shot and

1

killed) were deleted, according to the restaurant's manager and McDonald's attorney.

54) On information and belief, former IPRA investigator Lorenzo Davis was terminated from his employment in 2015 because he determined that several police shootings were unjustified. Davis' team of investigators for IPRA found as many as six incidents where the officer was not justified in shooting the civilian victim. Davis' supervisor at IPRA directed him to change his finding and determine that each shooting was justified. Davis was told that if he did not change his finding, he was insubordinate and would face discipline.

55) CPD detectives assigned to investigate police shootings provide FOP representatives access to and information about police involved shootings. That access and information is passed, often under dubious notions of legal privilege, between lawyers and accused CPD officers. In this manner, CPD officers can craft false narratives about police shootings that do not conflict.

56) In furtherance of this practice, CPD and IPRA permit witness and accused officers to be represented by the same counsel and FOP representatives during official statements, who take breaks from being on the record to set their clients' stories straight.

57) In the same vein, officers who use deadly force and take the life of a citizen are not required to draft a contemporaneous narrative of what occurred that justified the shooting or otherwise give a recorded and on-the-record statement about what occurred. The City does not require officers who take the lives of citizens to make narrative reports about the occurrence until after the officer, through his representatives [legal counsel and/or the Fraternal Order of Police] have an

1

opportunity to review all reasonably available evidence so that the police can tell stories that do not conflict with themselves or the evidence.

58) Rather than discipline misconduct and require reporting, the City of Chicago circles the wagons. This widespread practice is allowed to flourish because Defendant City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control officers, and by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Decedent.

59) In this way, Defendant City violated Decedent's rights by maintaining policies and practices that were the moving force for the foregoing constitutional violations.

60) The above-described widespread practices, so well-settled as to constitute de facto policy in the City, and were able to exist and thrive because governmental policymakers with authority over the same, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

61) Decedent's injuries were caused by employees of the City, including but not limited to the individually named Defendant officer, who acted pursuant to City policy and practices in engaging in the misconduct described in this Count.

WHEREFORE, pursuant to *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), Plaintiff demands judgment against Defendant City of Chicago for an award of reasonable compensatory damages, plus attorney's fees and costs and any other relief this Court deems just.

## COUNT IX—INDEMNIFICATION

62) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

1

63) At all relevant times, Defendant City of Chicago was the employer of the Defendant officers.

64) Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

65) At all relevant times, Defendant Poulos was an employee of the City of Chicago who acted within the scope of his employment in committing the misconduct described herein.

**WHEREFORE**, should Defendant Poulos be found liable on one or more of the federal claims set forth above, Plaintiff demands that Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against said Defendant(s), plus attorneys' fees and costs awarded and such other and additional relief that this Court deems equitable and just.

## COUNT X—*RESPONDEAT SUPERIOR*

66) Each of the paragraphs above is incorporated by reference as though fully stated herein.

67) In committing the acts alleged in the preceding paragraphs, Defendant Poulos was an agent of the City of Chicago and was acting at all relevant times within the scope of his employment.

68) Defendant City of Chicago is liable as principal for all torts committed by its agents.

**WHEREFORE**, should Defendant Poulos be found liable on one or more of the state claims set forth above, Plaintiff demands that, pursuant to *respondeat superior*, Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against said Defendant(s), as well as costs awarded.

## JURY DEMAND

The Plaintiff requests a trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to counsel.

Respectfully submitted,

/s/ Michael Oppenheimer

Erickson & Oppenheimer, Ltd.
223 W. Jackson, Suite 200
Chicago, IL 60606
312-327-3370

1