IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARONISHA RAMSEY, on her own behalf and as Special Administrator of the Estate of KAJUAN RAYE, deceased, ) ) ) ) | |
| ) | Case No. 16 CV 10913 |
| Plaintiff, ) | |
| ) | Judge Shah |
| v. ) | |
| ) | Magistrate Judge Mason |
| SGT. JOHN POULOS, individually, and the CITY OF CHICAGO, a municipal corporation. ) ) ) ) | JURY DEMAND |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff submits she is entitled to partial summary judgment on the issue of liability because the undisputed material facts show that Officer Poulos seized Mr. Raye through the application of unreasonable deadly force when he shot Mr. Raye in the back. There is no genuine dispute over the material facts because the parties' expert evaluations of the physical evidence blatantly contradict Officer Poulos' account of the use of deadly force, as the Supreme Court explained in *Scott v. Harris*, 550 U.S. 372, 380 (2007).[1] Thus, no trial is necessary on whether Poulos deployed excessive force.

No reasonable juror could believe Poulos' justification for shooting Mr. Raye because while Poulos claims he shot Mr. Raye as he fled with a pistol pointed at the officer, both parties'

---

[1] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

1

expert evaluations of the physical evidence, conducted late in the litigation, scientifically determined that the firearm *must* have been secured inside Raye's inner jacket pocket and not in his hand when Poulos shot. The bullet path traveled through Raye's clothing, into his back, exiting out of his body and through layers of clothes, piercing the front left breast pocket, and striking the firearm still secured *inside* Mr. Raye's jacket pocket, where the bullet came to rest *inside* the pocket with no exit hole, precluding Officer Poulos' account that Raye held the weapon pointed in the direction of the officer. Because at summary judgment the court should not adopt a party's account blatantly contradicted by the record, the Court should not adopt Poulos' impossible account, without which Plaintiff contends no genuine dispute of material fact prevents the entry of summary judgment on her excessive force claim.

## STANDARD OF REVIEW

A party is entitled to summary judgment in the absence of a genuine dispute over a material fact. *Scott v. Harris*, 550 U.S. at 378 (citing Fed. R. Civ. P. 56(c)). At summary judgment, "courts are required to view the facts and draw reasonable inferences, 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. at 378 (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)) (additional citation omitted). However, an opponent to a properly supported summary judgment motion "'must do more than simply show that there is some metaphysical doubt as to the material facts . . .. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris* at 378 (quoting *Matsushita Elec. Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## ARGUMENT

Plaintiff submits she is entitled to summary judgment on the issue of liability. Applying

2

the proper standard of review at summary judgment, the Court can find the absence of any *genuine* dispute of the material facts, where Poulos' version of events is blatantly contradicted by the record, including the opinion of his own expert. The irrefutable physical evidence shows that at the moment Poulos shot Raye in the back, the firearm was secured inside Raye's front jacket pocket, and therefore the firearm could not be pointed at Poulos. Without Poulos' account of the shooting, no evidence supports any justification for deadly force, such as a threat to Poulos' life, and thus Plaintiff is entitled to summary judgment.

Judgment for Plaintiff is especially appropriate in this instance to prevent Poulos from attempting to try this matter on the basis of unfair prejudice alone, where even though the decedent ran from Poulos carrying a loaded firearm, science indisputably confirms Poulos did not tell the truth about what he perceived, frustrating proper application of the objective force standard. The result would reflect the exact confluence of the disclosure requirements of the Federal Rules of Civil Procedure, the presumption of unreasonableness governing the warrantless use of deadly force, and the refusal of sham defenses at summary judgment. Accordingly, the summary judgment rules allow the Court to disregard Poulos' indisputably false account, and the record therefore reflects no factual justification for the use of deadly force. Plaintiff is thus entitled to summary judgment.

**I.      No Reasonable Jury Could Believe Poulos' Account**

The Court should not adopt Poulos' "version of the facts for purposes of ruling on" Plaintiff's motion for summary judgment because no reasonable jury could believe that account in light of the physical evidence and the opinions of Poulos' own expert. *Id.* In *Scott v. Harris*, the Supreme Court held that reviewing courts need not rely on a factual account, "so utterly discredited by the record that no reasonable jury could have believed," it. *Id.* Thus, the Supreme

Court reversed the lower courts failure to, "view[] the facts in the light depicted by the videotape," criticizing their adoption of the plaintiff's, "visible fiction," when ruling on summary judgment.

In the Seventh Circuit, multiple courts have extended the *Scott* rationale to discredit fictions analogous to the fiction Poulos attempts here. *In Holt v. Ford Motor Co.*, for example, the Seventh Circuit affirmed summary judgment based on an adversary's handwriting expert and consistent circumstantial evidence, relying on *Scott v. Harris* to find that no rationale juror could believe that party's claims about their own signature. *Holt v. Ford Motor Co.,* 275 Fed. App'x 553 (7th Cir. 2008).

Analogously, in *Smith v. County of Butte*, 2017 U.S. Dist. LEXIS 65335 at *9 (E.D.Cal. Apr. 28, 2017), the district court granted summary judgment to officers on the authority of *Scott v. Harris* because, "the physical evidence of record flatly contradicts," the eyewitness testimony that a spring fell out of a pellet rifle, where the spring did not match a component of the pellet rifle. In light of this and other circumstances, the Court concluded that no reasonable jury could believe the eyewitness account or infer that an officer saw a spring fall out of a jacket, nullifying otherwise proper testimony that contradicted a material fact.

The instant case presents an even better candidate for summary judgment than the U.S. Supreme Court's decision in *Scott v. Harris*, the Seventh Circuit's *Holt v. Ford Motor Co.* decision, or the California district court's opinion in *Smith v. County of Butte*, because Poulos' own expert agrees that his account defies science and the physical laws of nature, which could not be bent to conform around Poulos' fiction. The Court should grant summary judgment for Plaintiff.

### A. The Parties Agree That The Physical Evidence Demonstrates The Firearm Was Secured Inside Raye's Jacket

The parties in this case agree that that physical evidence shows that the firearm recovered was secured inside Raye's jacket when Poulos used deadly force. Plaintiff's expert opines that the, "bullet entered the victim from his back, traveled through his body and encountered the Kahr firearm that was located in the breast pocket of the Pelle Pelle jacket." *See* Exhibit 6, Diaczuk report, p. 12. Four primary circumstances evident from the physical evidence support this conclusion: 1) the bullet holes in Mr. Raye's clothing show passage through the jacket, the sweatshirt, the tee-shirt, his body, and entry into the inside jacket pocket with no corresponding exit; Ex. 6, pp. 7-8; 2) the recovery of the bullet from Mr. Raye's inside jacket pocket and the condition of that bullet at the time of recovery; *see* Ex. 6, pp. 10-12; 3) the, "plastic plate recovered from the victim's pocket," and trigger bar spring corresponded to pieces missing from the recovered firearm;" 4) the depression on the firearm's left grip surface that, "coincided with the damage to the magazine," in conjunction with, "deformation around the circumference of the hole in the," plastic plate, which leads to the conclusion, "that the plate was removed without unscrewing the screw." Ex. 6, pp. 3-7. Defendant's own firearms expert admits to, "agreement with Mr. Peter Diaczuk's conclusions about the path of the bullet and the damage it produced by striking the Kahr Arms pistol while in the pocket of the Pelle Pelle jacket," Exhibit 7, Poulos' Expert Report, which relied on a nearly identical analysis of the physical evidence.[2]

Science and the physical laws determined the undisputed material fact that the firearm

---

[2] One notable exception was that the defense violated this Court's agreed order on the inspection of evidence, Dkt. 111, p. 3 ¶ 8 ("No one will modify any condition(s) of the evidence in question, however, the tape on the handle of the firearm inventoried at 13861374 can be removed by Chicago police department personnel for the purpose of taking photographs and/or videos."), where during the defense examination, which occurred outside the presence and after Plaintiff's examination had concluded, "[t]he side plate screw was removed from the pistol and an attempt was made to install," the plastic plate. This forever altered the evidence and prevents the evidence from being shown to the jury in an unaltered, "as recovered" state. *See* Exhibit 7, Defendants' Expert Report, p. 18.

was inside Raye's jacket at the time of the shooting, contradicting Poulos' account throughout discovery, and as shown further below, the Court should enter judgment for Plaintiff.

### B. Poulos' Account Is Blatantly Contradicted By The Record

COPA's investigation incorporated Poulos' oft repeated claims that, "Raye again extended his right arm and pointed a gun at him, and Sgt. Poulos discharged his weapon a second time." Exhibit 8, COPA Summary Report, p. 1, ¶ 2. Almost a year later after Raye's death, COPA interviewed Poulos on November 17, 2017. *See* Exhibit 1, Poulos COPA Interview Transcript. Poulos states that he approached Mr. Raye to conduct a field interview because he, "fit the description and was suspected of committing a battery." Exhibit 1, p. 32:3-20; Exhibit 7, Poulos Deposition, p. 60:9-11. Mr. Raye ran, "[l]ike a gazelle," fast. Exhibit 1, p. 34:21-23. As Poulos comes around from the alley into a vacant lot, Mr. Raye is, "still running, but he is turned backwards, and he's lifting his hand . . . and in his hand uh, I see a very large barrel." Ex. 1, pp. 34:24-35:8; Ex. 2, p. 74:15-21 (describing a, "full extension on the right arm, about shoulder height."). When asked why he only fired one time initially, Poulos answers that at, "the moment I discharged my weapon, uh, I didn't, the hand was down, he was still running . . . I didn't feel I needed to fire a second shot . . . there was no gun anymore." Ex. 1, p. 39:2-14; Ex. 2, p. 80:8-10 (Poulos fired his weapon while Raye had his weapon pointed at the officer). Poulos describes the weapon as, "not silver, it's black, it's long."[3] Ex. 1, p. 37:8-9; Ex. 2, p. 76:4-7 (Poulos amends his testimony to describe the gun as, "[d]ark, had a little bit of a shine to it, but not - - not glaring. It just - - it - - it was - - it was what looked like a barrel of a gun to me."). He fired the first shot from fifteen to twenty feet away. Ex. 1, p. 38:1-3.

When Raye's hand went down, it went to his side, not into his pocket or waistband. Ex.

---

[3] The visible part of the recovered firearm would have been silver, had Poulos seen it. *See* Exhibit 6, Diaczuk Report, p. 3, Photo 1.

1, p. 40:2-7.  Although Poulos isn't exactly sure where the hand or gun went, Ex. 1, p. 40:7-11, Poulos figures it was still in Raye's hand because Raye points the firearm at Poulos a second time, "and I still have my gun out, uh, and I fire one more time, and then he makes the turn around the corner."  Ex. 1, p. 40:13-19; Ex. 2, p. 82:16-21; p. 83:15-19 (Poulos confirmed that before the second shot Raye allegedly turned enough for his arm to come back, "with the gun in his hand.").  Poulos is unequivocal to COPA: Raye pointed a gun at him a second time while running without looking back, and Poulos fired a second shot from about thirty feet away.  Ex. 1, p. 41:8-23.  After Poulos fired the second time, Raye's, "hand came down, and he kept going, came out of the vacant lot, . . . and I lost sight of him at that point."  Ex. 2, p. 84:4-9.

      COPA considered, "the possibility that Raye's gun may have been in his pocket at the time he was shot, not in his hand, and that the plastic piece broke off from Raye's firearm as a result of the impact of the bullet strike."  Exhibit 8, COPA Summary Report, p. 45, n. 192.  COPA found the theory, "too remote and unlikely a possibility to sufficiently refute Sgt. Poulos' account of the incident."  *Id.*  COPA's note is remarkable: 1) COPA did not identify the damage to the firearm grip caused by the bullet; 2) COPA's analysis of the alignment of the plastic pieces to the hole in the pocket as, "impractical" carries no weight because, "[t]he firearm was able to fit into the pocket with the defect in the liner coinciding with the damage to the grip (photo 24);" Exhibit 1, p. 8; 3) COPA's analytical assumption that the bullet must have struck the plastic piece instead of the reverse side of the grip appears to have resulted from the failure to adequately photograph and inspect the firearm or consult experts; 4) given that Poulos's own expert concludes the bullet struck the firearm secured in Mr. Raye's pocket, COPA *would* have found that circumstance sufficient to, "refute Sgt. Poulos' account of the incident."  Indeed, COPA concludes that the shooting was justified because, "Sgt. Poulos stated that at the point that

7

he discharged his weapon, Raye had just pointed his gun at him and was continuing to flee with the gun in his right hand." Exhibit 8, COPA Report, p. 46.

Both parties' experts confirm that Poulos' account is not scientifically possible considering the physical evidence, and COPA would have reached the same conclusion if armed with more accurate information about the recovered firearm. Poulos' account of his shooting of Raye does not permit the firearm to be in Mr. Raye's pocket when he shoots Mr. Raye dead, and no reasonable juror could credit an account that defies even Poulos' own expert's application of science and the physical laws that govern the behavior of matter. Even if Poulos could show some, "metaphysical doubt as the material facts . . .. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. at 380 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The Court should not consider his account for summary judgment purposes.

> **C.** **Legal Application Shows No Genuine Dispute Of Fact**

In this case, like in *Scott v. Harris*, Poulos' account does not create a *genuine* dispute of fact because the Court should view the facts in the light depicted by science and accept that what transpired followed the laws of nature, as confirmed by both parties' experts. This data irrefutably shows that Poulos shot Mr. Raye with a firearm secured in his pocket, thereby illuminating Poulos' visible fiction of an objective threat created when Raye pointed the firearm. Like the party's dispute in *Holt* over the authenticity of a signature where the court rejected a party's sworn denial as utterly discredited by the record, Poulos' account is utterly discredited by science. Similar to *Smith*, where the summary judgment standard operated to bar an eyewitness' account of a spring popping out of a rifle because the spring could not have come from the rifle,

8

here the firearm could not have been pointed at Poulos because science proves the firearm was secured in Mr. Raye's pocket at the time Poulos used deadly force. The Court should therefore not credit Poulos' account of Mr. Raye pointing the firearm for the purposes of ruling on whether Poulos had an objectively reasonable justification for shooting Mr. Raye., and the Court should grant summary judgment to Plaintiff.

### D. Three Other Legal Principles Support Summary Judgment

The confluence of three other legal principles supports summary judgment where the record blatantly contradicts an officer's account of the shooting, even beyond the direct authority provided by *Scott v. Harris*, 550 U.S. at 380. First, principles embodied in the Federal Rules of Civil Procedure that eliminate trial by ambush prevent the officer from spinning an undisclosed account of the shooting at the trial. Second, the burden of proof in the context of a warrantless seizure of life by a law enforcement officer requires a *prima facie* showing of legality that frames the triable issues, and where the judicial evaluation of the extrajudicial taking of life depends on an accurate recount of the material facts, a dispositively inaccurate narrative defeats application of the objective standard, eliminating any triable issues. And third, an officer, like Poulos, who perjures himself about his justification for an extrajudicial seizure of human life forfeits the right to defend that shooting on any other ground, else the truth and the duty to tell it be rendered meaningless, a conclusion and result no judge should accept. The Court should enter judgment for Plaintiff.

### 1. The Federal Rules Of Civil Procedure Prevent Trial By Ambush

"[T]he congressional judgment expressed in the Federal Rules of Civil Procedure [is] that 'trial by ambush' . . . disserve[s] the cause of truth." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 253 (1978) (J. Powell, concurring). Even after years in pretrial discovery, Plaintiff

9

is no closer to discovering Poulos' justification for the use of deadly force against her child, through no fault of Plaintiff. When first asked about the facts underlying his justification, Poulos chose not to answer on the basis of the Fifth Amendment. *See* Exhibit 9, Poulos' Answers To Interrogatories, p. 3, ¶ 5 ("reason(s) to approach, engage, or interact with Decedent"); pp. 4-5, ¶ 9 ("what criminal act, if any, you observed Decedent commit"); p. 5, ¶ 11 ("what physical contact [including through firearms] you and Decedent had with each other"); p. 6, ¶ 12 ("the nature of any conversation you had with the Decedent"); p. 7, ¶ 16 ("Why did you fire at the Decedent? State all facts to support any assertion that you were in fear for your life"); p. 8, ¶ 18 (describe Decedent's weapon, if he had one). Even after an oral interview by COPA and an oral deposition in this litigation, *see* Exhibit 1 and 2, Plaintiff does not know what Poulos will allege at trial, since his own expert blatantly contradicted his testimony. Even Poulos' other expert Roy Taylor, who impermissibly opines the shooting was reasonable, fails to address the blatant contradiction between Poulos' testimony and the physical evidence. *See* Exhibit 10, Report of Roy Taylor. That Poulos should leave Plaintiff in the dark prevents Plaintiff from adequately preparing for trial and is inconsistent with the Federal Rules of Civil Procedure's bar on trials by ambush. This supports the idea that the Court should grant summary judgment in favor of Plaintiff.

  **2. <u>The Presumption Of Unreasonableness Supports Summary Judgment</u>**

  In civil cases, the Seventh Circuit endorses, "the presumption of unreasonableness [that] arises from the fact of," warrantless searches and seizures, which imposes, "on the defendant, 'the burden of going forward with evidence to meet or rebut the presumption.'" *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997) (quoting F.R.E. 301); *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991) ("It is true that searches and seizures conducted without warrants are presumptively

unreasonable. [citations omitted] . . . [T]he presumption may cast upon the defendant the duty of producing evidence of . . . [an] exception[] to the warrant requirement."). Nowhere is that presumption more important than where an officer, "is the only surviving witness to the series of events leading to [a citizen's] death, . . . [because] the officer's credibility [is], 'crucial to the case . . . [and] should the finder of fact believe [the officer] and find his testimony credible, no violation of the Fourth Amendment has occurred.'" *See Garvin v. Wheeler*, 304 F.3d 628, 631 (7th Cir. 2002) (affirming denial of qualified immunity because of doubt over officer's credibility about circumstances of shooting) (quoting trial judge); *see also Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1332-33 (11th Cir. 1988).[4]

And where an officer's *crucial* account about the warrantless use of deadly force, "is so utterly discredited by the record," or "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment," *Scott v. Harris*, 550 U.S. at 380-81. This therefore leaves the record here devoid of any evidence to support the application of an exception to the warrant requirement. Accordingly, the Court should enter judgment in favor of Plaintiff because Poulos' account is utterly discredited, and there is no evidence from which a reasonable jury could find the presumption of unreasonableness overcome.

There is little doubt that Poulos could spin his false account in any manner of different

---

[4] The collective federal authorities have effectively created a spoliation-type rule to prevent officers from taking advantage of the absence of the Decedent's testimony in deadly force contexts. If a jury discredits the Defendant's testimony and can infer the other evidence a narrative of unlawful force, beyond mere speculation, the jury may also infer the Decedent's wrongfully destroyed testimony would have been unfavorable to the officer. Any other result unfairly credits the formulaic recycled police officer as victim narrative divorced from the reality that sometimes officers suffer from unreasonable fears for their safety that result in unnecessary deaths, as was the case here.

11

ways to turn the focus onto Mr. Raye's flight with a dangerous loaded weapon secured in his pocket, but without any evidence of an objective threat, Poulos shot dead a fleeing battery suspect, a circumstance unambiguously unreasonable under Fourth Amendment jurisprudence. Police officers may only use deadly force to prevent escape where, "the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm." *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). No such evidence exists, and accordingly, Plaintiff is entitled to judgment on liability as a matter of law, and this case should proceed into discovery on Plaintiff's *Monell* claim or to trial on damages only.

### 3. The Confluence Of Litigation Principles Support Summary Judgment

The Seventh Circuit has, "long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions. *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168 (7th Cir. 1996) (citing *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987) (additional citations omitted)). Thus, Poulos, whose testimony is crucial, cannot defeat summary judgment by changing his story to conform to the evidence for, "[i]f such contradictions were permitted," parties could defeat the purposes of a summary judgment motion, which includes unfounded claims and sham defenses. *Bank of Illinois*, 75 F.3d at 1168-69 (citing *Babrocky v. Jewel Food Co. & Retail Meatcutters Union*, 773 F.3d 857, 861 (7th Cir. 1985) (additional citation omitted)).

But even if Poulos clings to his false story at trial, explaining away his untruthfulness as the product of mistake, bias, accident, or otherwise, and substitutes or modifies his version of events to be consistent with the facts, Poulos should still lose. The confluence of several litigation principles mandates that result: (1) the bar on trials by ambush; (2) the unrebutted

presumption of unreasonableness on the warrantless seizure of life; (3) the existence of only hypothetical justifications for the use of deadly force; and (4) the inevitable changes at trial to the Chicago Police Department's testimony and evidence. Plaintiff's defeat of a material aspect of the officer's *prima facie* justification for the warrantless use of deadly force should result in judgment for Plaintiff. Even if that result creates some metaphysical doubt about the merits because the officer could parse the evidence for a substitute or alternative justification in conflict with his testimony, summary judgment should still be entered.

When a Plaintiff prevails over an officer's *prima facia* justification by irrefutable scientific evidence, a victory rare enough as to arise almost never, Plaintiff should win, and the Court should enter summary judgment.

## CONCLUSION

Because Poulos' account is blatantly contradicted by material physical evidence, under the authority of *Scott v. Harris*, the Court should enter judgment on liability in favor of Plaintiff and open discovery on Plaintiff's *Monell* claim or hold a damages only trial.

Respectfully Submitted,

s/ Jared Kosoglad

Jared Kosoglad
One of Plaintiff's Attorneys
Jared S. Kosoglad, P.C.
223 W. Jackson Suite 200
Chicago, IL 60606
312-513-6000
jared@jaredlaw.com

13

## **CERTIFICATE OF SERVICE**

Undersigned counsel certifies that all parties of record were served via this Court's electronic filing system.

s/ Jared Kosoglad